COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                                                 Superior Court Department

| JOSEPH WINCHELL,<br><br>    Plaintiff,<br><br>v.<br><br>WALSH MOVERS, TEAMSTER LOCAL UNION NO. 25, and<br>ANDREW FOULSHAM,<br><br>    Defendants. | Civil Action No.: 1984CV02699<br><br>**JURY DEMAND** |
|---|---|

## **AMENDED COMPLAINT**

### I. Introduction

1. This action arises out of the unlawful conduct of Defendants Walsh Movers, Teamster Local Union No. 25, and Andrew Foulsham in discriminating against Plaintiff Joseph Winchell, specifically that Defendants regarded him as having an addition to narcotics and terminating his employment as a result.

### II. Parties

2. Joseph Winchell is an adult male resident of Quincy, Massachusetts.

3. Walsh Movers is a commercial storing and moving company based in Avon, Massachusetts.

4. Teamsters Local Union No. 25 ("Local 25") is a union based in Boston, Massachusetts.

5. Andrew Foulsham is an adult male, and was, at all relevant times, a General Manager at Walsh Movers. Upon information and belief, Foulsham lives in Massachusetts.

III. <u>Facts</u>

6. Winchell has been a member of Local 25 since 2003.

7. Winchell started working fulltime for Walsh Movers in April 2016 as a driver. He had previously worked on-call for Walsh Movers.

8. Winchell has a benign tumor in his foot that causes extreme pain without medication. Doctors have prescribed medication to treat the pain, including prescription opioids. Winchell has also been prescribed Aderall to treat attention deficit disorder since childhood.

9. Winchell was required to take a drug test around the time he became a full-time employee for Walsh Movers. Because he was required to take the drug test, the fact that he was on the medications listed in Paragraph 8 was disclosed to certain supervisors at Walsh Movers and members of Local 25.

10. One of the supervisors to whom Winchell disclosed the medications was Andrew Foulsham.

11. Winchell drove for Walsh Movers from 2016 until his termination.

12. Winchell had a Medical Examiner's Certificate signed on April 12, 2017 valid for two years under the Federal Motor Carrier Safety Regulations, 49 C.F.R. 291.41-49, which was required to drive for Walsh Movers.

13. During his employment, Winchell never received any negative reviews or negative comments about this work performance.

14. On December 12, 2018, Foulsham informed Winchell that he was being terminated from Walsh Movers due to his conduct over the past six months, specifically for failing to report to work and/or tardiness. The termination letter stated that Winchell was issued a total of four final warnings for his failure to report to work and notify management of his

absences.

15. The statements in the termination letter are untrue or grossly exaggerated. In fact, when Winchell received his personnel file after December 12, he found numerous disciplinary documents that he had never seen before that purported to give him warnings for failing to report to work. None of the documents had Winchell's signature. Foulsham signed all or substantially all of them.

16. As full-time employee of Walsh Movers, as a member of Local 25, Winchell does not have a regular schedule with required shifts. Rather, each work day, the general manager or someone on his behalf will make calls to members on the list of full-time employees in the order of union seniority to see who wants to work the following day. Under the Local 25 contract, an employee like Winchell is free to accept work or decline work as he or she determines. The only limitation is that a full-time member must work a minimum number of days per year or else that member will lose his or her place on the list.

17. After Winchell received his termination letter, he asked his local steward at Local 25 about why he was terminated because he disagreed with what was written in the December 12 letter.

18. Winchell was told that the owners of Walsh Movers would not take him back to work or sit down with him unless he went to a drug rehabilitation center.

19. Winchell then went to Local 25. Local 25 representative Larry Libby told him that the union was already setting up a bed in a detox center for him and he needed to agree to go to drug treatment if he wanted his job back. Libby told Winchell that he needed to sign a waiver to agree to release records related to his drug treatments and evaluation to Local 25 Vice President Steven South and Field Representative Joseph Foti.

20. Winchell filed a grievance via the union regarding his termination. He did not hear anything about his grievance until he received a message on December 28, sent a couple days earlier, saying that he needed to appear the following day for a meeting about the grievance. He was out of state due to the holiday season and had not been checking his messages. As a result, Local 25 did not pursue the grievance.

21. Upon information and belief, Foulsham caused or contributed to the termination of Winchell due to his erroneous belief that Winchell was addicted to narcotics.

22. As a result of the above actions and conduct, Winchell has suffered lost wages and severe emotional distress.

Administrative Notice

23. On February 27, 2019, Winchell filed a charge of discrimination with the Massachusetts Commission Against Discrimination against Walsh Movers, Teamsters Local Union No. 25, and Andrew Foulsham.

### COUNT I
### M.G.L. c. 151B - Disability Discrimination
### (Walsh Movers and Andrew Foulsham)

The actions as set forth above, including, *inter alia*, terminating Winchell's employment because it regarded him as having a disability (addiction), constitute a violation of M.G.L. c. 151B § 4, causing damages. This claim is brought under § 4(16) against Walsh Movers and under §4(4) against Andrew Foulsham.

### COUNT II
### M.G.L. c. 151B - Disability Discrimination
### (Teamsters Local Union No. 25)

The actions as set forth above, including, *inter alia*, excluding Winchell from full membership rights in the union because it regarded him as having a disability (addiction),

4

constitute a violation of M.G.L. c. 151B, § 4(2), causing damages.

WHEREFORE, Plaintiff prays this Court:

1. ORDER the Defendants to pay the Plaintiff compensatory damages for Plaintiff's lost pension, lost wages, front pay, and emotional distress;

2. ORDER the Defendants to pay punitive damages and Plaintiff's attorneys' fees and costs as allowed by law; and

3. Any further relief as is just and necessary.

Respectfully submitted,
JOSEPH WINCHELL,
By his attorneys,

_____
Joseph L. Sulman, BBO #663635
Elijah Bresley, BBO #691092
Law Office of Joseph L. Sulman
391 Totten Pond Road, Suite 402
Waltham, MA 02451
(617) 521-8600
jsulman@sulmanlaw.com
ebresley@sulmanlaw.com

Dated: October 16, 2019

<u>Certificate of Service</u>

I hereby certify that this document was served on counsel of record for all parties by First Class Mail on October 16, 2019.

_____
Joseph L. Sulman